IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. RDB 09-095 |
| | * | |
| ROBERTO E. DELEON | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This matter is before the court on Defendant Roberto DeLeon's Motion to Exclude

Hearsay Statements as Substantive Evidence (Paper No. 38) and on the Government's

Consolidated Response to Defendant's Motions to Exclude Evidence and Suppress [A]

Statement (Paper No. 44).  DeLeon challenges the admissibility of evidence the Government

plans to submit under Rule 807 of the Federal Rules of Evidence, the residual hearsay exception.

Specifically, DeLeon challenges the admissibility of videotaped statements made by his minor

step-daughter ("AD") on April 12 and 14, 2007.  The issues raised have been fully briefed and a

hearing was conducted on September 9 and 11, 2009.  For the reasons stated below, DeLeon's

motion is DENIED.  The videotaped statements of the minor witness AD will be admitted as

substantive evidence during the Government's case-in-chief pursuant to Rule 807.

BACKGROUND

The Defendant Roberto DeLeon has been charged in a two-count Indictment for the

murder and assault of Jordan Peterson, his eight-year-old stepson.

Jordan collapsed while taking a shower in his parents' home near Kadena Air Base,

Okinawa, Japan, on April 11, 2007.  At the time, Jordan was living with his mother, Air Force

1

Staff Sergeant Sabrina DeLeon ("SSgt. DeLeon"); his step-father, Defendant DeLeon; and his nine-year-old half-sister AD. The final autopsy report issued by the medical examiner who examined the young boy's body found the cause of death to be blunt force injuries of the abdomen.  The medical examiner ruled the death a homicide.

On February 25, 2009, a two-count Indictment was issued, charging DeLeon, Jordan's step-father, with murder and assault related to Jordan's death.  DeLeon was charged with second-degree murder under 18 U.S.C. §§ 1111(a) and 3261(a)(1).  He was also charged with assault under 18 U.S.C. §§ 113(a)(6) and 3261(a)(1).

Air Force Office of Special Investigations ("AFOSI") Special Agent Donecia Hunter ("SA Hunter") interviewed AD on April 12, 2007, one day after Jordan's death.  AFOSI Special Agent Cara McBrayer ("SA McBrayer") interviewed AD on April 14, 2007.  These interviews were videotaped in their entirety.  AD was not under oath when the interviews were conducted. During the interviews, AD stated that she had on previous occasions seen DeLeon punch Jordan in the abdomen, and that Jordan complained of stomach pain on the day he died.  AD also stated that she did not see DeLeon strike Jordan on the day Jordan died.

AD appeared before a grand jury on March 12, 2008 and March 19, 2008.  On both occasions, she recanted her previous statements and testified that she had never seen DeLeon punch Jordan, and that she had lied to the AFOSI investigators when she told them otherwise.

The Government has notified DeLeon that it plans to enter into evidence the videotaped statements made by AD in April 2007.  On August 7, 2009, DeLeon filed his Motion to Exclude Hearsay Statements as Substantive Evidence.  (Paper No. 38.)  DeLeon seeks to exclude AD's videotaped statements as inadmissible hearsay.  The Government opposed this motion in its Consolidated Response to Defendant's Motions to Exclude Evidence and Suppress [A]

Statement, filed on September 3, 2009.  (Paper No. 44.)  Government argues that the videotaped

statements should be admitted because they fall within the scope of Rule 807's residual hearsay

exception.

ANALYSIS

Rule 807 of the Federal Rules of Evidence is commonly known as the residual hearsay

exception.  Fed. R. Evid. 807.   The rule states in relevant part that

> "A statement not specifically covered by Rule 803 or 804 but having equivalent
> circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule,
> if the court determines that (A) the statement is offered as evidence of a material
> fact; (B) the statement is more probative on the point for which it is offered than
> any other evidence which the proponent can procure through reasonable efforts;
> and (C) the general purpose of these rules and the interests of justice will best be
> served by admission of the statement into evidence.  However, a statement may
> not be admitted under this exception unless the proponent of it makes it known to
> the adverse party sufficiently in advance of the trial or hearing to provide the
> adverse party with a fair opportunity to prepare to meet it . . . ."

*Id.*[1]

Rule 807 was intended to be used only in exceptional circumstances.  *See, e.g., United*

*States v. Harrison*, 296 F.3d 994, 1004 (10th Cir. 2002); *United States v. Dunford*, 148 F.3d 385,

394 (4th Cir. 1998); *Bouyges Telecom v. Tekelec*, 473 F.Supp.2d 692, 696 (E.D.N.C. 2007).

However, courts have regularly employed the residual hearsay exception in child abuse

litigation, particularly when admitting the prior statements of minor child abuse witnesses and

victims.  *See, e.g., United States v. Peneaux*, 432 F.3d 882, 887-90, 893 (8th Cir. 2005)

(upholding the admission as substantive evidence, during the government's case-in-chief, of a

child's prior statements regarding the abuse she suffered and her abuser's identity even though

---

[1] Rule 807 was created in 1997 when "the contents of Rule 803(24) and Rule 804(b)(5) [were] combined and transferred to a new Rule 807. . . . No change in meaning is intended." Fed. R. Evid. 807 advisory committee's note.  For the purposes of this analysis, earlier cases that address Rule 803(24) and Rule 804(b)(5) are applicable to a discussion of Rule 807.

that child later recanted her statements); *Harrison*, 296 F.3d at 999-1000, 1007 (upholding the admission as substantive evidence, during the government's case-in-chief, of a child's prior statements regarding the sexual abuse she suffered and her abuser's identity even though that child later recanted her statements) ; *Dunford*, 148 F.3d at 387-88, 394 (upholding the admission as substantive evidence of two children's prior statements regarding the abuse they suffered, the child abuse they witnessed, and the identity of their abuser even though those children later recanted their statements).

In the Fourth Circuit, courts determine whether to admit a prior out-of-court statement under Rule 807 based on five criteria. First, the statement must have circumstantial guarantees of trustworthiness that are equivalent to the guarantees provided by other forms of admissible hearsay. Second, the statement must be offered as evidence of a material fact. Third, the statement must be the most probative piece of evidence obtainable through reasonable efforts. Fourth, the admission of the statement promotes the general purposes of the Rules and the interests of justice. Fifth, the proponent of the statement must notify the adverse party of its intent to offer the statement into evidence sufficiently in advance of trial. *See* Fed. R. Evid. 807; *Dunford*, 148 F.3d at 393-94; *United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995).

Two Rule 807 requirements are easily met by the videotaped statements in question. AD's videotaped statements certainly are related to material facts in this case. DeLeon has been charged with murder and assault of Jordan Peterson. AD's videotaped statements may indicate that DeLeon had abused Jordan in the past. Her statements further indicate the type of abuse that may have led to Jordan's death. These are critical issues in the case.

Additionally, there is no question that the Government has given DeLeon proper notice of its intention to use the videotaped statements at trial. The Government notified DeLeon of its

intentions at least two months before the trial is scheduled to begin. (Def.'s Mot. to Exclude Evid. 2.)  What remains is to determine whether: the statements contain circumstantial guarantees of trustworthiness; whether the statements are the most probative evidence reasonably available; and whether admission of the statements would be in the interests of justice.

The most important element of the rule is "that the district court properly determine that 'equivalent circumstantial guarantees of trustworthiness' are present." *Dunford*, 148 F.3d at 393. Courts consider a number of factors to determine a particular statement's trustworthiness. *Idaho v. Wright*, 497 U.S. 805, 821 (1990); *Williams v. Virgin Islands*, 271 F.Supp.2d 696, 705 (D.V.I., Div. of St. Croix, App. Div. 2003); *N.B.*, 59 F.3d at 776; *United States v. Tome*, 61 F.3d 1446, 1453 (10th Cir. 1995).

In the instant case, several factors indicate that AD's videotaped statements are sufficiently trustworthy for admission under Rule 807.  First, the statements were consistent with each other.  As the Fourth Circuit noted in *Dunford*, the consistency of a child's repeated statements to government officials provides "clear indicia of the trustworthiness of [those] statements." 148 F.3d at 393.  Here, AD made her statements to two different AFOSI investigators on two different dates. (Def.'s Mot. to Exclude Evid. 2.)  During both interviews, AD stated, among other things, that she had seen DeLeon hit Jordan in the stomach on previous occasions, and that Jordan said his stomach hurt on the day that he died.  (Def.'s Mot. to Exclude Evid. 2.)

Second, both interviewers used open-ended questions and other non-coercive techniques when interviewing AD.  Courts commonly consider non-coercive interview techniques as a factor that weighs in favor of a statement's trustworthiness. *Peneaux*, 432 F.3d at 892; *United States v. N.B.*, 59 F.3d 771, 778 (8th Cir. 1995); *Tome*, 61 F.3d at 1453.  In this case, AD first

met the interviewing AFOSI agents only a few minutes before the interviews began.  (Govt.'s

Consolidated Resp. to Def.'s Mot. to Exclude Evidence & Suppress Stmt. 2-3, 11.)  Both AFOSI

agents Hunter and McBrayer used non-leading questions when interviewing AD.[2]  In fact, AD

was the first to use the word "punch" when describing how DeLeon sometimes punished Jordan.

AD did so when responding to SA Hunter's open-ended question: "Any other type of

punishment?"

DeLeon argues that the statements are not trustworthy because SAs Hunter and McBrayer

were motivated to find incriminating evidence against him.  (Def.'s Mot. to Exclude Evid. 4.)

This argument fails.  Courts have frequently admitted children's prior statements in child abuse

cases, even when those statements were made to officials who were investigating the alleged

child abuse.  *See, e.g., Harrison*, 296 F.3d at 997, 1007 (upholding the trial court's admission of

statements made by a child abuse victim to an FBI agent investigating the abuse); *Dunford*, 148

F.3d at 387-88, 393 (concluding that the trial court did not err in admitting statements made by

two sisters to a police officer investigating their father's abusive behavior).  That a child made

his or her statements to an officer investigating abuse allegations does not make those statements

any more or less trustworthy, particularly when the interview was conducted in a non-coercive

manner.

DeLeon argues that AD's videotaped statements are not sufficiently trustworthy because

the interviews were conducted at this very difficult time in AD's life.  (Def.'s Mot. to Exclude

Evid. 4.)  This argument fails, however, based on Fourth Circuit precedent to the contrary.  In

*Dunford*, the Fourth Circuit determined that a statement made to government officials in a

serious context indicates that the statement is trustworthy.  148 F.3d at 392-93 (allowing hearsay

---

[2] AD's videotaped interviews with SAs Hunter and McBrayer are part of the record in this case.  They were
submitted by the Government on April 9, 2009, in compliance with a request by Magistrate Judge Susan K. Gauvey,
and have been reviewed by this Court.

testimony regarding statements made by the defendant's daughters while the defendant was being investigated for child abuse). Here, AD's statements to the AFOSI investigators were undoubtedly made in the most serious of contexts. AD spoke to SAs Hunter and McBrayer on April 12 and April 14, 2007, just one and three days after Jordan's death. Further, the statements indicate her concern that her stepfather might go to jail. As the Fourth Circuit instructs, the seriousness of the context in which AD made her statements weighs in favor of trustworthiness.

DeLeon also argues that AD's statements are not sufficiently trustworthy because AD has since recanted those statements before a grand jury. (Def.'s Mot. to Exclude Evid. 4.) However, when all Rule 807 requirements have been met, courts have admitted children's prior statements regarding a defendant's abusive behavior despite those witnesses' later recantations. *Peneaux*, 432 F.3d at 893; *Harrison*, 296 F.3d at 1007; *Dunford*, 148 F.3d at 394. The question is not whether the child witness has recanted his or her prior statement. Rather, the question is whether the prior statement satisfies all of the Rule 807 requirements.

AD's videotaped statements also satisfy the Rule 807 requirement that they be more probative on this issue than any other evidence the Government can reasonably procure. In *Dunford*, the Fourth Circuit held that children's prior statements to social workers, a police officer, and a school administrator were the most probative evidence that could be obtained because "the only other witnesses to the alleged incidents were biased as members of [the defendant's] immediate family." 148 F.3d at 393. The situation is much the same here, where the only witnesses to DeLeon's alleged abuse are AD and SSgt. DeLeon. Several courts have also noted that prior statements may be considered the most probative evidence available when a child witness is reluctant to testify. *See, e.g., Peneaux*, 452 F.3d at 1006; *Williams*, 271 F.Supp.2d at 706. In this case, AD's grand jury appearances demonstrate both her reluctance to

testify and her difficulty in providing clear testimony.   Because the only witnesses to the alleged

incidents of child abuse are the Defendant's family members and because AD has demonstrated

a reluctance to testify clearly, AD's videotaped statements offer the most probative evidence

available to the Government on these issues.

Finally, admission of the videotaped statements will best serve the interests of justice and

the general purposes of the Federal Rules of Evidence.   AD made her videotaped statements in

April 2007, days after Jordan's death.   In March 2008, AD recanted her statements in front of a

grand jury.   Eighteen months have passed since AD's appearance before the grand jury.   Two

and a half years have passed since the death of Jordan Peterson.   The videotaped statements will

provide the jury with important evidence of statements AD provided to government officials in

the days immediately following her brother's death.

## CONCLUSION

Because AD's videotaped statements satisfy all the requirements for admissibility under

Rule 807, Defendant Roberto DeLeon's Motion to Exclude Hearsay Statements as Substantive

Evidence (Paper No. 38) is DENIED.   Government will be allowed to enter AD's videotaped

statements as substantive evidence during its case-in-chief.   Trial will begin on October 5, 2009.

A separate Order follows.


Dated: September 21, 2009



_RHD Bennett_
Richard D. Bennett
United States District Judge