IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERTO E. DELEON, | * | |
| Petitioner, | * | Civil Action No. RDB-15-0299 |
| v. | * | Criminal Action No. RDB-09-095 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*    \*    \*    \*    \*    \*          \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On October 22, 2009, a jury convicted Petitioner Roberto E. DeLeon ("Petitioner" or "DeLeon") of second degree murder in violation of 18 U.S.C. §§ 1111(a), 3261(a)(1) (Count One); and assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6), 3261(a)(1) (Count Two). *See* Jury Verdict, ECF No. 102. Thereafter, this Court sentenced Petitioner to concurrent terms of imprisonment of 360 months and 120 months for Counts One and Two, respectively, for a total term of 360 months. *See* Sentencing as to Roberto E. DeLeon, ECF No. 114. The United States Court of Appeals for the Fourth Circuit affirmed his conviction on May 15, 2012. *United States v. DeLeon*, 678 F.3d 317 (4th Cir. 2012), ECF No. 152.

Petitioner filed a writ of *certiorari* with the United States Supreme Court, which was granted. *DeLeon v. United States*, 133 S.Ct. 2850 (2013). In the same order granting *certiorari*, the Supreme Court vacated the judgment and remanded the case to the Fourth Circuit for

further consideration in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013).[1] The Fourth Circuit, in turn, vacated the judgment of this Court and remanded the case for resentencing *United States v. DeLeon*, 539 F. App'x 219 (4th Cir. 2013).[2] On February 3, 2014, this Court resentenced Petitioner to concurrent terms of imprisonment of 264 months and 120 months for Counts One and Two, respectively, for a total term of 264 months. *See* Re-sentencing as to Roberto E. DeLeon, ECF No. 175.

On February 2, 2015, DeLeon filed the pending Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 177). DeLeon seeks collateral review, claiming that he received ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. DeLeon offers several grounds in support, including his trial counsel's alleged failure to disclose all expert opinions prior to trial, object to certain evidence introduced by the Government, and concede to facts that allegedly could have led to a conviction of a lesser-included crime. *See generally* Mot. to Vacate, ECF No. 177.

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Petitioner's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 177) is DENIED.

<u>BACKGROUND</u>

The following facts are summarized from *United States v. DeLeon*, 678 F.3d 317, in which the Fourth Circuit affirmed Petitioner's conviction, and the parties' submissions with

---

[1] The *Alleyne* Court held that facts which increase mandatory minimum sentences must be submitted to the jury and established beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2163.

[2] At trial, Jordan's age was not submitted to the jury. *DeLeon*, 539 F. App'x at 221. This Court, however, made a finding based on "clear evidence" that Jordan's age was eight years old, and used that finding as a basis for increasing Petitioner's mandatory minimum sentence. *Id.* The Fourth Circuit concluded that under *Alleyne*, this Court's finding was impermissible. *Id.*

respect to the pending Motion to Vacate, unless otherwise indicated.

DeLeon, his wife, Staff Sergeant Sabrina DeLeon, and his two step-children, Jordan and A.D.[3] lived together near the Kadena Air Base on the island of Okinawa, Japan. On April 11, 2007, DeLeon's wife was at work and DeLeon was at home watching Jordan and A.D. Jordan complained of abdominal pain and a headache. In response to Jordan's complaints, DeLeon told Jordan to take a shower. While in the shower, Jordan collapsed. Attempts to revive him were unsuccessful and he died around midday. An autopsy revealed that Jordan died due to blunt force injury to his abdomen, resulting in a lacerated liver and severe internal hemmoraghing.

DeLeon admittedly exercised corporal punishment against Jordan, including spanking him with a belt, scratching him, poking him in the chest, twisting his eyes, forcing him to hold his hands out with a hammer, stepping on his back, and forcing him to do sit ups and pushups. A.D. stated in a videotaped interview after Jordan's death that DeLeon sometimes made Jordan hold his arms out to the side and punched him in the abdomen.[4]  DeLeon's disciplinary tactics were noticeable to people outside the family; Jordan's teacher referred Jordan to the Air Force Family Advocacy Program after observing a bruise on his forehead. The family participated in the program, which involved counseling meetings and advice on parenting techniques.

After Jordan's death, the Air Force Office of Special Investigation Services intiated an investigation. DeLeon became the primary suspect, and was indicted on February 25, 2009

---

[3] This witness was a juvenile at the time of the trial and therefore will be referred to herein only as "A.D."

[4] She later recanted this testimony at trial, though her videotaped interview was admitted into evidence and its admission was upheld on appeal. *See DeLeon*, 678 F.3d 317.

in the United States District Court for the District of Maryland for second degree murder and assault resulting in serious bodily injury.

Over the course of a thirteen-day trial, no witness could testify to observing the blow that caused Jordan's death. However, a statement describing prior acts of abuse that Jordan made during a meeting with a social worker was introduced. In addition, the rough corporal punishment inflicted by DeLeon was well-documented at trial by his admissions to others and the testimony of Staff Sergeant Sabrina DeLeon. The Government's theory was that, because DeLeon admittedly used rough corporal punishment against Jordan, he knowingly and maliciously dealt the fatal blow to the boy. DeLeon's defense at trial was that he was completely innocent of any wrongdoing and that Jordan had died due to an accident unrelated to any action by him.

Both parties retained forensic pathologists to testify as expert witnesses regarding Jordan's cause of death and when he had suffered the blunt force trauma. Dr. James Louis Caruso, the Government's forensic pathologist, testified that Jordan's cause of death was a homicide due to an injury inflicted up to twelve hours prior to his death. Dr. Charles Wetli, a forensic pathologist called by the defense, agreed with Dr. Caruso's determination as to cause of death, though he opined that Jordan's fatal injury could have occurred up to twenty-four hours prior to his death. The record in this case is abudently clear that both experts agreed that this young boy's death was a homicide, and not an accident.

The jury convicted DeLeon on both counts. *See* Jury Verdict, ECF No. 102. Thereafter, as noted *supra*, this Court sentenced Petitioner to concurrent terms of imprisonment of 360 months on Count One and 120 months for Count Two (ECF No.

114). His conviction was upheld on appeal, *United States v. DeLeon*, 678 F.3d 317, but the Supreme Court vacated the judgment and remanded the case for further consideration in light of *Alleyne v. United States*, 133 S. Ct. 2151. *DeLeon v. United States*, 133 S.Ct. 2850 (2013). On February 3, 2014, this Court resentenced Petitioner to concurrent terms of imprisonment of 264 months and 160 months for Counts One and Two, respectively (ECF No. 175).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (b) the court lacked "jurisdiction to impose the sentence, . . . [(c)] the sentence was in excess of the maximum authorized by law, or [(d) the sentence] is otherwise subject to a collateral attack." 28 U.S.C. § 2255. "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

To state a claim for relief under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance" prong, of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable

professional assistance." *Id.* at 688-89. Under the second, or "prejudice" prong, the petitioner must demonstrate that his counsel's errors deprived the petitioner of a fair trial. *Id.* at 687. In order to satisfy this prong, the defendant must show that there is a reasonable probability that, but for counsel's error, "the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has instructed that a court need not address both prongs if the petitioner makes "'an insufficient showing on one.' " *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *Strickland*, 466 U.S. at 697. The Fourth Circuit has also noted that the mere possibility of a different trial result does not satisfy the burden of proving prejudice placed on the defendant. *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986).

<u>DISCUSSION</u>

DeLeon asserts that he received ineffective assistance of counsel in violation of his Sixth Amendment rights on three grounds. First, defense counsel allegedly failed to object to two allegedly undisclosed expert opinions rendered by the Government's expert at trial. Second, defense counsel failed to disclose two opinions of his own expert prior to trial. Third, defense counsel failed to concede facts at trial that allegedly would have led to a manslaughter conviction, rather than Petitioner's actual conviction for second degree murder. Each argument will be addressed in turn.

## I.    Failure to Object to Undisclosed Expert Opinions

Petitioner claims that defense counsel failed to object to the admission of two opinions proffered by one of the Government's expert witnesses, Dr. Troxel. This failure to object purportedly amounted to ineffective assistance of counsel. First, Dr. Troxel testified that Jordan could have died of "excessive corporal punishment," yet the Government did not disclose this opinion prior to trial. Regarding this same opinion, Petitioner claims that the Government failed to establish Dr. Troxel's credentials as an expert in determining cause of death. Second, Petitioner argues that another opinion by Dr. Troxel—that Jordan would have survived had he received prompt medical treatment—was not disclosed prior to trial. DeLeon contends that defense counsel's failure to object to these opinions had a "materially harmful impact" on his case. *See* Mot. to Vacate, at 12.

Turning first to Dr. Troxel's alleged opinion that Peterson's cause of death was due to "excessive corporal punishment," defense counsel's failure to object to its admission did not deprive Petitioner of fair trial. In support of DeLeon's argument, his trial counsel, Deborah L. Boardman, submitted an affidavit stating that she "[did] not believe [this] opinion[] was disclosed" and she had no strategic reason for failing to object to its admission. *See* Mot. to Vacate Ex. 1, ECF No. 177-1 (Boardman Affidavit). Moreover, Petitioner contends that Dr. Troxel, as an expert in emergency medicine, was not qualified to render an opinion regarding Jordan's cause of death. Petitioner relies on the following testimony to support his argument:

> **Mr. Cunningham**: Without having performed an autopsy, and based on what you had observed on Jordan's body and through the various testing that was done, were able to form an opinion as to in your opinion at that time, what was the likely cause of Jordan's death?

| **Dr. Troxel**: | Well, initially, I did come up with, you know, some ideas, but that was only after speaking with the mom and making sure that I ruled out any other kind of underlying causes. Asking her if he had been ill recently, had, you know, had any fevers. Did he have any other medical problems? You know, you rule out some thing. And with no history of any real trauma per their report, no falls, no, I mean, no significant falls, I should say, or anything else, then *it certainly led me to believe that this could have been from excessive corporal punishment.* Along those lines, having reviewed the electronic medical record notes where there had been documentation of physical abuse by the stepfather in the medical record, it certainly increased my suspicion. |
|---|---|

Trial Tr. vol. 2, 207:15–208:06, ECF No. 124 (emphasis added).

Forensic pathology is the field of medicine with expertise in determining cause of death. *See United States v. Bailey*, 112 F.3d 758, n.3 (4th Cir. 1997) (explaining that forensic pathologists determine causes of death). However, Dr. Troxel did not render an opinion as to Jordan's cause of death. In fact, immediately prior to the testimony relied on by DeLeon, Dr. Troxel affirmatively declared that she was *not* able to determine a cause of death:

| **Mr. Cunningham**: | Dr. Troxel, were you able to determine a cause of death? |
|---|---|
| **Dr. Troxel**: | Not specifically, no, sir. |

Trial Tr. vol. 2, 207:13–14, ECF No. 124.

Dr. Troxel's statement thus was an expression of her suspicions, but not a conclusive expert opinion on the cause of Jordan's death. As such, her testimony does not amount to an unqualified expert opinion to which a reasonable attorney should have objected. Despite Ms. Boardman's statement that she failed to object for no strategic reason, her failure to do so did not fall below *Strickland*'s standard of reasonableness.

Even if Dr. Troxel's opinion constituted an improperly admitted expert opinion to which defense counsel should have objected, the opinion did not have a prejudicial effect on

the outcome of the trial. Dr. James Louis Caruso, the Government's forensic pathologist, and Dr. Charles Wetli, a forensic pathologist called by the defense, were both accepted by this Court as experts in forensic pathology. Both testified that Jordan's death was a homicide. Trial Tr. vol. 2, 82:8–13, ECF No. 124; Trial Tr. 170:24–13, ECF No. 145. In light of these indisputably qualified and properly admitted expert opinions, it is highly improbable that that, but for the admission of Dr. Troxel's suspicions regarding Jordan's cause of death, the jury would have had reasonable doubt respecting guilt. Absent any prejudice, Petitioner's claim fails to satisfy the second *Strickland* prong.

DeLeon's argument with respect to Dr. Troxel's opinion that Jordan could have survived if he had received prompt medical attention is similarly deficient. DeLeon contends that, as this opinion was not disclosed prior to trial, Ms. Boardman's failure to object amounted to ineffective assistance of counsel. In the Government's opposition to the pending Motion to Vacate, the Government attached correspondence transmitted via email to Petitioner and his attorney regarding Dr. Troxel's testimony. Opp'n to Mot. to Vacate Ex. 1, ECF No. 181-1. This correspondence, dated September 23, 2009, states, "we expect Drs. Troxel and Caruso to testify that had Jordan Peterson received prompt medical attention for the laceration of his liver, he could have survived this injury." *Id.* Thus, the Government did, in fact, disclose the opinion. As the opinion was disclosed, a reasonable attorney would not object to the opinion on the ground of disclosure. Defense counsel's failure to object to this testimony thus does not amount to ineffective assistance of counsel under *Strickland*.

## II.   Failure to Disclose Expert Opinion

Next, DeLeon contends that defense counsel's failure to disclose two opinions by DeLeon's own expert, Dr. Wetli, constitutes ineffective assistance of counsel in violation of the Sixth Amendment. The two opinions at issue are (1) Dr. Wetli's belief that Jordan's death could have been caused by an accident, and (2) his belief that Jordan sustained the injury twelve to twenty-four hours prior to his death. Petitioner claims that, as a result of counsel's failure to disclose, counsel could not introduce this evidence at trial. The omisison of this evidence allegedly undermined Petitioner's theory that Jordan's cause of death could have resulted from an accident unrelated to any action by Petitioner.

Even assuming, for the sake of argument, that counsel's performance with respect to the first opinion fell below an objective standard of reasonableness, DeLeon cannot satisfy the second "prejudice" prong. Dr. Wetli testified on direct examination, cross examination, and redirect examination that Jordan's death was a homicide. Trial Tr. 171:4–13, ECF No. 145; Trial Tr. 7:13–16, 54:22–25, ECF No. 146. Had he also opined that the death could have been caused by an accident, such an opinion would have contradicted his earlier testimony. At best, this statement would have neutralized Dr. Wetli's testimony that homicide was the cause of death. Yet, *Strickland* requires that the error of counsel deprive Petitioner of a fair trial. 466 U.S. at 687. Merely neutralizing one opinion does not generate a reasonable probability that the jury would have acquitted the Petitioner. Defense counsel's alleged error thus did not prejudice Petitioner under *Strickland*.

Turning to the second Dr. Wetli opinion—that Jordan's injury was caused twelve to twenty-four hours before his death—DeLeon claims that counsel's failure to disclose

prevented the questioning of other Government witnesses on that timeframe.[5] Once again, Petitioner fails to fulfill the "prejudice" prong of *Strickland*.

During trial, the Government moved to exclude Dr. Wetli's testimony on the grounds that defense counsel had not timely disclosed the opinion at issue. *See* Second Mot. *in limine*, ECF No. 89. The Government argued that the failure to timely disclose this opinion prejudiced the Government in that, had the Government known defense counsel intended to explore this timeframe, it would have conducted additional discovery and questioned its witnesses differently. After a hearing on the motion, this Court ruled in favor of the Petitioner and denied the Government's motion to exclude Dr. Wetli's testimony. Dr. Wetli was permitted to testify at trial. Trial Tr. 137:21-22, ECF No. 145. This Court did, however, add a limiting instruction whereby defense counsel was prohibited from arguing later that the Government failed to introduce evidence that it had "taken certain steps in its investigation" during the twelve to twenty-four hour timeframe. Trial Tr. 136:4-8, ECF No. 145.

This limitation does not satisfy the "prejudice" prong of *Strickland* because there is no reasonable probability that the excluded testimony would have led the jury to have reasonable doubt. Dr. Wetli was permitted to testify about the twelve to twenty-four hour timeframe, and the Government did not introduce evidence that it had investigated this timeframe. The limitation imposed by this Court, in effect, only prohibited defense counsel from *pointing out* to the jury that the Government had not investigated the twelve to twenty-four hour timeframe. The evidence—or lack thereof—was there for the jury to weigh. The

---

[5] The Court first notes that defense counsel *did* disclose this opinion, but the disclosure was not timely pursuant to Fed. R. Crim. P. 16(b).

jury chose to convict Petitioner. For this reason, defense counsel's untimely disclosure of Dr. Wetli's opinion regarding the twelve to twenty-four hour timeframe does not amount to ineffective assistance of counsel in violation of the Sixth Amendment.

### III.      Failure to Concede to Manslaughter

Finally, DeLeon claims that defense counsel should have conceded to manslaughter in order to avoid a murder conviction. In his Motion to Vacate, DeLeon argues that denying all allegations and attempting to show that Jordan's death could have been caused by a fall was "futile" and allegedly amounted to ineffective assistance of counsel. *See* Mot. to Vacate, at 17. If the defense had "admitted some wrongdoing," but "denied the higher level of culpability to sustain a murder charge," Petitioner claims he could have avoided a second degree murder conviction. *Id.* This argument is without merit.

Petitioner's argument is an attempt to recast his chief defense theory. At trial, defense counsel advanced two alternative theories. First, defense counsel maintained Petitioner's innocence. Trial Tr. 93:22–2, ECF No. 148. Second, defense counsel argued that if Petitioner did commit the act that led to Jordan's death, he struck Jordan with an intent to discipline and his conduct amounts to nothing more than involuntary manslaughter. *Id.* at 125:11–16. The verdict form in this case indeed included a line addressing "the lesser included charge of involuntary manslaughter," in the event that the jury had returned a verdict of not guilty on second degree murder. Jury Verdict, ECF No. 102. The jury was given the option of considering a lesser included offense.

Furthermore, courts are highly deferential to the strategic choices of trial counsel. *See, e.g.*, *United States v. Higgs*, 663 F.3d 726, 739 (4th Cir. 2011); *Roach v. Martin*, 757 F.2d 1463

(4th Cir. 1985). Indeed, this deference applies to cases in which counsel, unlike in this case, chooses *not* to request jury instructions on any lesser-included offenses. *See Hooks v. Ward*, 184 F.3d 1206, 1234 (10th Cir. 1999) (holding that state prisoners seeking federal habeas relief are not entitled by law to a lesser-included offense instruction because, among other reasons, it may be inconsistent with trial strategy); *Washington v. United States*, 291 F. Supp. 2d 418, 442 (W.D. Va. 2003) (holding that counsel's choice to forego a lesser-included instruction was a strategic decision to which the court should accord deference). In this case, defense counsel's choice not to *concede* to manslaughter was a tactical decision that furthered Petitioner's theory of Jordan's death, but it did not preclude the jury's consideration of manslaughter.

The jury *was* instructed to consider a lesser-included offense—involuntary manslaughter. The Court made clear that should the jury find Petitioner not guilty of second degree murder, it should consider the lesser included offense of manslaughter. *See* Jury Instructions, ECF No. 100 ("If you find the defendant not guilty of murder in the second degree … you should proceed to determine whether the defendant is guilty of involuntary manslaughter."). The jury then convicted DeLeon of second degree murder, and not of a lesser offense. Petitioner's claim thus shows no resulting prejudice under *Strickland*.

## CONCLUSION

For the foregoing reasons, Petitioner Roberto E. DeLeon's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 177) is DENIED.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.


Dated:          September 30, 2015

                                            _____/s/_____
                                            Richard D. Bennett
                                            United States District Judge